**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| NONGSHIM USA, INC,<br><br>Plaintiff,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and the UNITED STATES OF AMERICA,<br><br>Defendants. | Court No. 26-cv-04830 |

**COMPLAINT**

Plaintiff NONGSHIM USA, INC ("Plaintiff"), by and through its undersigned attorneys, alleges as follows:

1. Plaintiff is a U.S.-based importer of merchandise, acts as the importer of record for such imports, and challenges the assessment of certain duties on its imported merchandise.

2. Beginning in February of 2025, through a series of executive orders, President Donald J. Trump invoked the International Emergency Economic Powers Act (“IEEPA”), 50 U.S.C. § 1701 et seq., to impose new tariffs (“IEEPA duties”) on goods imported from nearly every foreign country, including countries from which Plaintiff imports goods. Plaintiff has been required to pay those tariffs.

3. This Court, the Federal Circuit, and the Supreme Court of the United States have held that IEEPA does not authorize the President to impose these tariffs. *See Learning Resources, Inc. v. Trump*, No. 24-1287, slip op. (U.S. Feb. 20, 2026) (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

4. The Supreme Court also confirmed that challenges to the IEEPA duties fall “within the exclusive jurisdiction of” the Court of International Trade. *Id*. at 5. Thus, this Court has

jurisdiction and authority to order remedial relief and refunds of IEEPA duties paid by importers.

5. This action is necessary because, notwithstanding the Supreme Court's holding that the IEEPA duties and the underlying executive orders are unlawful, importers, including Plaintiff, that have paid IEEPA duties are not guaranteed refunds in the absence of their own judgment and judicial relief. The entries on which Plaintiff paid IEEPA duties have liquidated or will imminently liquidate with those duties finally assessed, and any protests will be futile because CBP lacks discretion and authority to overturn or disregard the executive orders imposing the IEEPA duties. Plaintiff is therefore entitled, as a matter of law, to a judgment of this Court ordering full refunds of these unlawfully imposed IEEPA duties.

6. Accordingly, Plaintiff seeks (i) a declaration that the IEEPA duties are unlawful; (ii) a declaration that all IEEPA duties paid by Plaintiff were collected *ultra vires*; (iii) reliquidation of any liquidated entries on which Plaintiff paid IEEPA duties; (iv) a full refund, inclusive of interest as provided by law, of all IEEPA duties that have been collected from, or assessed against, Plaintiff to date, together with such further relief as the Court deems proper.

## PARTIES

7. Plaintiff NONGSHIM USA, INC is a U.S. Corporation, incorporated in CA, with its principal place of business located in Rancho Cucamonga, California.

8. Defendant United States Customs and Border Protection ("CBP") is the federal agency that collected the IEEPA duties deposited by Plaintiff.

9. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

10. Defendant United States of America received the disputed IEEPA duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

11. Defendants are referred to collectively in this complaint as "CBP."

///

///

## JURISDICTION

12. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Resources,* slip op. at 5, n.1.

13. This Court possesses all the powers at law and in equity of, or as conferred by statute upon, a district court of the United States. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including, but not limited to, declaratory judgments, orders of remand, injunctions and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

14. Plaintiff has standing to bring this action because it is an importer of record that paid IEEPA duties to CBP on its entries of imported merchandise, which duties have been held unlawful by the Supreme Court. As a result of the executive orders identified in this action, Plaintiff has paid IEEPA duties and thus has suffered injury caused by those orders. The relief Plaintiff seeks from this Court would redress those injuries.

15. Plaintiff must commence an action under 28 U.S.C. § 1581(i) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). This action was timely commenced within two years of the accrual of Plaintiff's cause of action, which arose from the executive orders implementing the IEEPA duties.

## GENERAL PLEADINGS

### I. The President orders a series of tariffs, invoking IEEPA for his authority.

#### a) The IEEPA duties

16. On February 1, 2025, the President issued three executive orders imposing tariffs on imports from Canada, Mexico, and China. Each executive order was premised on IEEPA authorizing the tariffs. Collectively, these orders are referred to in this complaint as the "Trafficking Tariff Orders."

17. The executive order directed at Mexico, Executive Order 14194, 90 Fed. Reg. 9,117,

*Imposing Duties To Address the Situation at Our Southern Border*[1], imposed an additional 25% tariff on the import of goods from Mexico, subject to certain exceptions.

18. The executive order directed at Canada, Executive Order 14193, 90 Fed. Reg. 9,113, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*[2], also imposed an additional 25% tariff, subject to certain exceptions.

19. Finally, the executive order directed at China, Executive Order 14195, 90 Fed. Reg. 9,121, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China* ("China Tariff Order")[3], imposed an additional 10% *ad valorem* tariff on products from China imported into the United States in addition to existing duties.

20. Four days later, on February 5, 2025, the President issued another order, Executive Order 14200, 90 Fed. Reg. 9,277, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*[4].

21. The following month, on March 3, 2025, the President further amended the China Tariff Order through Executive Order 14228, 90 Fed. Reg. 11,463, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*[5]. That Amendment increased the incremental tariffs on imports from China to 20%.

22. On April 2, 2025, citing trade deficits with U.S. trading partners as a national emergency, the President issued Executive Order 14257, 90 Fed. Reg. 15,041, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits* ("Reciprocal Tariff Order")[6]. The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports into the United States, effective April 5, and additional country-specific "reciprocal" tariffs on 57 countries, effective April 9. *Id.* At Annex I. These country-specific tariffs ranged from 11% to 50%. *Id.*

---

[1] Exec. Order No. 14194, 90 Fed. Reg. 9,117 (Feb. 7, 2025).
[2] Exec. Order No. 14193, 90 Fed. Reg. 9,113 (Feb. 7, 2025).
[3] Exec. Order No. 14195, 90 Fed. Reg. 9,121 (Feb. 1, 2025).
[4] Exec. Order No. 14200, 90 Fed. Reg. 9,277 (Feb. 11, 2025).
[5] Exec. Order No. 14228, 90 Fed. Reg. 11,463 (Mar. 7, 2025).
[6] Exec. Order No. 14257, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

23. On April 8, 2025, in response to retaliatory tariffs from China, the President increased the reciprocal tariff rate applicable to China by 50 percentage points—from 34% to 84%—through Executive Order No. 14259*,* 90 Fed. Reg. 15,509, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low- Value Imports from the People's Republic of China*[7].

24. The following day, the President suspended for 90 days the higher country-specific tariffs for all countries except China, for which he increased the reciprocal tariff again—from 84% to 125%—through Executive Order No. 14266, 90 Fed. Reg. 15,625, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*[8]. Meanwhile, the separate 20% tariff on imports from China remained in place, such that most imports from China were subject to a minimum 145% IEEPA tariff.

25. Through these executive orders, the President directed changes to the Harmonized Tariff Schedule of the United States, requiring goods subject to the challenged tariffs to be entered under new tariff classifications.

26. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, *et al. v. Trump*, *et al.*, No. 25-cv-00066 (Dkt. 2). This Court held the orders unlawful, the Federal Circuit sitting *en banc* affirmed, and that decision was subsequently affirmed by the Supreme Court on February 20, 2026.

27. In the months following the *V.O.S. Selections* complaint, the President, invoking IEEPA, issued additional executive orders imposing additional tariffs and modifying existing others. As set forth below, IEEPA does not authorize the President to impose tariffs. Through this action, Plaintiff challenges the executive orders and related directives, instructions, amendments, and adjustments issued under claimed IEEPA authority that impose such tariffs (collectively, the "Challenged Tariff Orders"), which have been held unlawful by this Court, the Federal Circuit, and the Supreme Court.

28. CBP continued to collect duties imposed by the Challenged Tariff Orders during the

---

[7] Exec. Order No. 14259*,* 90 Fed. Reg. 15,509 (Apr. 14, 2025).
[8] Exec. Order No. 14266, 90 Fed. Reg. 15,625 (Apr. 15, 2025).

pendency of the *V.O.S. Selections* litigation and related actions, and only just announced on February 22, 2026, that such duties imposed under the Challenged Tariff Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." Cargo Systems Messaging Service CSMS # 67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb 22, 2026).[9]

29. By this complaint, Plaintiff seeks relief with respect to all duties that it has paid or will pay to the United States arising from the Challenged Tariff Orders.

**b) CBP's implementation of the unlawful tariffs**

30. CBP is responsible for the assessment and collection of duties, including the IEEPA duties. *See* 19 U.S.C. §§ 1500, 1502.

31. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the Harmonized Tariff Schedule of the United States ("HTSUS"). Pub. L. No. 100–418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States consistent with the HTSUS, which establishes tariff rates and statistical categories through a structured system of chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id*

32. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

33. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential directives. 19 U.S.C. §§ 1202, 3005, 3006; see also *Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to

---

[9] Available at https://content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_WIDGET_2

modify the HTSUS lies with the President"); *Maple Leaf Marketing, Inc. v. United States*, 528 F. Supp. 3d 1365, 1378–79 (Ct. Int'l Trade 2021).

34. When goods enter the United States, CBP assesses and collects duties on those goods, after confirming the applicable HTSUS classification, in accordance with the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502.

**c) Liquidation**

35. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

36. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays estimated duties based on its customs declaration, including the declared value, origin, and HTSUS classification of the imported goods. See 19 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

37. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. See 19 U.S.C. § 1500.

38. Once CBP determines the final amount of duty, CBP "liquidates" the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. See 19 U.S.C. § 1504(b).

39. Liquidation—unless extended—must occur within one year. See 19 U.S.C. § 1504(a). Typically, CBP liquidates entries 314 days after the date of entry (automatic liquidation cycle) and posts notice on its website. 19 C.F.R. § 159.9.

40. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. See 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

41. Once liquidation has occurred, and if the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the duties.

See 19 U.S.C. § 1514.[10] Not all liquidations are protestable, however: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024).

42. In *AGS Co. Automotive Sol. v. U.S. Customs and Border Protection, et. al.*, No. 25-00255 (Ct. Int'l Trade Dec. 15, 2025) ("*AGS*"), a three-judge panel of this Court confirmed the Court's authority to order reliquidation of entries subject to IEEPA duties. *Id.* In a related action, the government represented that it "will not object to the Court reliquidating any of plaintiff's entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. U.S. Customs and Border Protection, et. al.*, No. 25-078, ECF No. 16 at 12 n.4 (Ct. Int'l Trade May 23, 2025). The government further stipulated that it will refund any IEEPA duties found to have been unlawfully collected, after a final and unappealable decision so holding and ordering such relief. *Id.*, EFC No. 17. The government has taken the same position in other cases involving IEEPA duties. *See AGS*, slip. op. 25-154 at 4, n.1.

**II. The Supreme Court has held the IEEPA duties are not authorized.**

43. The Challenged Tariff Orders cite IEEPA, 50 U.S.C. § 1701 *et seq*., the National Emergencies Act, 50 U.S.C. § 1601 *et seq*., section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs.

44. None of these statutes authorizes the President to impose tariffs. Of these authorities, only IEEPA is invoked by the President and CBP as the basis to impose and collect the IEEPA duties, and IEEPA does not authorize what the Challenged Tariff Orders purport to impose.

45. IEEPA grants the President certain powers, but those powers "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

46. The text of IEEPA does not include the word "tariff", nor any term of equivalent

[10] CBP can also voluntarily reliquidate within 90 days of the liquidation. See 19 U.S.C. § 1501.

meaning.

47. IEEPA was first enacted in 1977 and has been amended several times, but it has never been amended to authorize, and has not otherwise been used by any other President to impose, tariffs.

48. The United States Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1.

49. The United States Constitution also provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises…" U.S. CONST. art. I, § 8, cl. 3 ("Taxing Clause"), and "[t]o regulate Commerce with foreign Nations." Id., cl. 3 ("Commerce Clause"). Tariff has long been understood to fall within the Taxing and Commerce Clauses.

50. To the extent the Constitution permits Congress to delegate any portion of its Article I powers to the President, such delegation must, at a minimum, provide an intelligible principle that directs and meaningfully constrains the President's exercise of delegated authority. See *Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 145 S. Ct. 2482, 222 L. Ed. 2d 800 (2025). In IEEPA, Congress did no such thing.

51. By any objective measure, the Challenged Tariff Orders are "of vast economic and political significance." Because IEEPA does not clearly authorize the President to impose tariffs— indeed, the statute does not mention the words "tariff" or "duty" and is not codified within Title 19, which contains Congress's trade laws—the Challenged Tariff Orders cannot stand and the defendants are not authorized to implement and collect them.

52. On May 28, 2025, a three-judge panel of this Court granted summary judgment to plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA duties at issue in that case. The government appealed to the Court of Appeals for the Federal Circuit.

53. The Federal Circuit stayed this Court's judgment and injunction and ordered an expedited briefing schedule and hearing.

54. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this

Court's decision that the IEEPA duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

55. In a separate action brought by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated and argued on November 5, 2025.

56. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.[11]

**III. Plaintiff paid IEEPA duties.**

57. As of the date of this complaint, Plaintiff has paid IEEPA duties imposed by the Challenged Tariff Orders.

58. Plaintiff's imported merchandises subject to IEEPA duties entered the United States under new HTSUS classifications implementing those duties.

59. Plaintiff has paid IEEPA duties on numerous entries.

60. The entries for which Plaintiff has paid IEEPA duties under the Challenged Tariff Orders have begun or are scheduled to begin liquidating imminently.

## <u>STATEMENT OF CLAIMS</u>

### COUNT ONE

### THE CHALLENGED TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES*

61. Plaintiff incorporates paragraphs 1-60 above by reference.

62. In *Learning Resources*, the Supreme Court considered challenges to the President's

[11] This complaint cites to the "*Learning Resources*" slip opinion because that was the lead case at the Supreme Court for purposes of the case caption. The *Learning Resources* case itself was vacated for lack of jurisdiction, while the Federal Circuit's decision in *V.O.S. Selections* was affirmed.

authority to impose tariffs under IEEPA and reviewed this Court's decision, as affirmed by the Federal Circuit, in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., by imposing tariffs on imported goods.

63. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. In the Supreme Court's words, "[o]ur task … is to decide only whether the power to 'regulate . . . importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not." *Learning Resources*, slip op. at 16. The Supreme Court thus affirmed the Federal Circuit's decision, which for its part had affirmed this Court's ruling on the merits of the IEEPA tariffs. *Id.* at 21.

64. The Challenged Tariff Orders purport to impose duties and modify the Harmonized Tariff Schedule of the United States solely under IEEPA.

65. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Gov't. Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025).

66. This Court is bound by the Supreme Court's decision in *Learning Resources* and, as a result, should order refunds of all IEEPA duties paid by Plaintiff, with interest as provided by law.

67. Because the Challenged Tariff Orders were issued without statutory authority, they are void *ab initio* and any duties collected pursuant thereto must be refunded.

**COUNT II**

**THE CHALLENGED TARIFF ORDERS ARE UNCONSTITUTIONAL**

68. Plaintiff incorporates paragraphs 1-67 above by reference.

69. In the alternative, if the Court were to construe IEEPA as authorizing tariffs, the IEEPA tariff orders must nevertheless be held unlawful because IEEPA in that event would constitute an

impermissible delegation of legislative power from Congress to the President.

70. Article I, § 1 and § 8 of the U.S. Constitution vests in Congress exclusively the power to "lay and collect … Duties." U.S. CONST. art. I, § 8, cl. 1.

71. Under settled separation-of-powers principles and binding precedent of the Supreme Court, Congress cannot delegate its power to the President unless, at the very least, it provides an intelligible principle that directs and meaningfully constrains the President's exercise of that power. IEEPA does not do that.

72. Plaintiff therefore seeks a declaration that the Challenged Tariff Orders are unconstitutional as applied to Plaintiff, enjoin defendants from enforcing them against Plaintiff, and order refund of all IEEPA duties collected from Plaintiff, with interest as provided by law.

**COUNT III**

**DECLARATORY RELIEF (28 U.S.C. § 2201)**

73. Plaintiff incorporates paragraphs 1-72 above by reference.

74. Pursuant to 28 U.S.C. § 2201(a), this Court may declare the rights and legal relations of the parties.

75. Plaintiff's claims present an actual controversy as to the President's authority under IEEPA, the constitutionality of IEEPA, and the authority of CBP to implement and collect the resulting tariffs.

76. Plaintiff is an importer of record and has suffered injury by having been required to pay IEEPA duties as a result of the Challenged Tariff Orders on goods it has imported into the United States.

77. This Court can exercise its equitable power to enter a declaratory judgment that the Challenged Tariff Orders are unlawful for the above reasons, and that CBP lacks authority to implement and collect the resulting tariffs, as to Plaintiff.

**PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court:

a) Declare that the President lacks authority under IEEPA to impose tariffs;

b) Declare that the Challenged Tariff Orders are *ultra vires* and void *ab initio* with respect to Plaintiff;

c) Declare that with respect to Plaintiff, CBP lacks authority to implement and collect any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

d) With respect to Plaintiff, permanently enjoin Defendants from imposing and enforcing any tariffs set out in the HTSUS that are based on the Challenged Tariff Orders;

e) Order CBP to reliquidate any entries of Plaintiff that have been liquidated with IEEPA duties;

f) Order CBP to liquidate all unliquidated entries of Plaintiff without the imposition of IEEPA duties;

g) Order the United States to refund to Plaintiff all IEEPA duties collected on its entries, regardless of liquidation status, with interest as provided by law;

h) Award Plaintiff their reasonable costs, including attorneys' fees, incurred in bringing this action; and

i) Grant such further relief as this Court deems proper.

Respectfully submitted,

Dated: October 28, 2026

/s/ Jin J. Kim______
Jin J. Kim

ACI LAW GROUP, PC
6 Centerpointe Drive, Suite 630
La Palma, CA 90623
pa@acilawgroup.com
Tel. (714) 522-3300
*Counsel to Plaintiff*